# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VACHON STEVEN ROBERTSON,<br><br>Defendant. | No. 22-CR-57-CJW-MAR<br><br><br>**SENTENCING OPINION** |

_____

## I. INTRODUCTION

This matter came on for sentencing on April 3, 2023. (Doc. 33). The government moved for an upward departure under United States Sentencing Guidelines Section 4A1.3 based on underrepresentation of criminal history, or, in the alternative, an upward variance based on the factors at Title 18, United States Code, Section 3553(a). (Doc. 31). The Court found an upward departure was warranted under Section 4A1.3. (Doc. 33). The Court stated that alternatively it would vary upward the same amount. The Court files this sentencing opinion to explain its reasoning in writing to aid the parties and the Eighth Circuit Court of Appeals, should one of the parties appeal the sentence.

## II. RELEVANT BACKGROUND

On July 19, 2022, a grand jury returned an Indictment charging defendant with one count of Possession with Intent to Distribute a Controlled Substance After Having Previously Been Convicted of a Felony Drug Offense, under Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 851. (Doc. 3).

In describing the offense conduct, defendant's presentence investigation report ("PSR") stated that on April 26, 2022, law enforcement officers were conducting surveillance of a residence related to an ongoing narcotics investigation. (Doc. 29, at 4).

1

Officers observed a motor vehicle operated by defendant stop at the residence and observed defendant enter the residence where he remained for 10 to 15 minutes before returning to his motor vehicle and leaving. (*Id.*). Officer then initiated a traffic stop on the motor vehicle. (*Id.*). During the traffic stop an officer ran his K-9 partner around the vehicle and the K-9 indicated to the odor of a narcotic. (*Id.*). Officers advised the defendant that they would be searching the motor vehicle and defendant said that he was not giving officers consent to search and further said that he had locked his keys inside the motor vehicle. (*Id.*). Defendant then claimed that his sister had driven his motor vehicle and noted that she was a marijuana user. (*Id.*). Defendant later admitted that he still had possession of his keys and unlocked his vehicle and officers conducted a search. (*Id.*). During the search, officers located and seized a scale with white residue, a razor blade, a Ziploc bag containing what appeared to be "crack" cocaine, plastic containers containing marijuana residue, empty zip-top baggies, and a Ziploc bag containing a white substance. (*Id.*). During the search, officers noted the odor of marijuana emanating from the motor vehicle. Officers also searched defendant's person and located two cellular telephones and $2,403 in cash. (*Id.*). Laboratory testing determined that the seized substance in the first Ziploc bag weighed 364.5 grams and contained salt of cocaine. (*Id.*). Laboratory testing determined that the seized substance in the second Ziploc bag weighed 28.58 grams and contained cocaine base. (*Id.*).

On November 3, 2022, defendant pleaded guilty before the Honorable Mark A. Roberts, United States Magistrate Judge, to Possession with Intent to Distribute a Controlled Substance After Having Previously Been Convicted of a Felony Drug Offense. (Doc. 21). On November 21, 2022, the Court formally accepted defendant's plea. (Doc. 24).

## III.  GOVERNMENT'S SENTENCING MOTIONS

For the following reasons, the Court granted the government's motion for upward departure and, in the alternative, its motion for upward variance.[1]

### A.  Upward Departure

The government argued an upward departure was appropriate under United States Sentencing Guidelines Section 4A1.3 because defendant's criminal history category substantially understates the seriousness of defendant's criminal history and the likelihood of him reoffending. (Doc. 31-1, at 2-8). In support, the government first cited defendant's history of drug-related convictions. (*Id.*, at 3). For instance, in 1993, defendant was convicted of possession of a controlled substance with intent to distribute on school grounds, and sentenced to six years' imprisonment. (*Id.* (citing PSR ¶21)). In that case, officers observed defendant make a drug transaction and when they approached him defendant threw a plastic bag to the ground that contained 20 smaller bags each containing crack cocaine. (*Id.*). The same year defendant was convicted of possession of a controlled substance and sentenced to one year in prison. (*Id.* (citing PSR ¶22). Again, officers observed defendant throw a plastic bag to the ground. (*Id.*). There the bag contained 13 plastic bags each containing crack cocaine. (*Id.*). In 1999, defendant was convicted of possession of a controlled substance, and sentenced to 18 months' imprisonment. (*Id.* (citing PSR ¶23)). Yet again, officers observed defendant holding a plastic bag that contained numerous other bags containing crack cocaine. (*Id.*, at 3-4). Further, when inspecting the area after this arrest, officers located one bag that contained 17 plastic bags, each containing crack cocaine, and another bag that contained 74 plastic bags, each containing crack cocaine. (*Id.*, at 4).

---

[1] The government also argued that the Court should vary downward on the drug quantity base offense level to reflect a 1 to 1 ratio on cocaine to cocaine base that would result in a base offense level of 20 instead of 24. (Doc. 31-1, at 6 n.1). The Court granted the government's motion for downward variance on this issue. (Doc. 33).

3

The government then cited defendant's other drug convictions. In 2001, defendant was convicted of possession of a controlled substance—crack cocaine—and sentenced to two days in jail. (*Id.* (citing PSR ¶25)). Defendant also has a prior federal conviction for possession with intent to distribute approximately 2.61 grams of cocaine base within 1,000 feet of a protected location. (*Id.* (citing PSR ¶28)). In that federal case, defendant was sentenced to 211 months' imprisonment followed by a six-year term of supervised release. (*Id.*).

The government also cited defendant's poor performance on supervised release. (*Id.*). Within a year of beginning his first term of supervised release for his federal conviction, defendant's supervised release was revoked because he tested positive for cocaine via a sweat patch, voided a urine specimen that tested positive for the presence of cocaine, failed to follow the instruction of his supervising officer, and failed to submit monthly report forms. (*Id.* (citing PSR ¶28)). Defendant was sentenced to eight months' imprisonment with five years of supervised release. (*Id.*). His second term of supervised release began in October 2018, and, on April 27, 2022, a petition to revoke his supervision was filed based on his failure to participate in substance abuse testing and his commission of this federal offense.[2] (*Id.*).

Finally, the government argued that even though defendant's prior sentences in paragraphs 21, 22, 23, and 25 of the PSR were outside of the applicable time period to be scored for defendant's criminal history points, those sentences evidenced similar conduct that the Court could consider in determining whether a downward departure was warranted. (*Id.*, at 5-6 (citing USSG §4A1.2, n.8)).

---

[2] The Court revoked defendant's supervised release, imposing a sentence of 28 months' imprisonment to be served consecutively to the term imposed in this case, with no term of supervised release reimposed. Case No. 02-cr-29-CJW-MAR, at Doc. 138.

4

Specifically, the government argued defendant's conduct here, where he possessed crack cocaine with the intent to distribute it, was similar to his prior conduct—that is, his conduct of possessing and/or distributing crack cocaine. (*Id.*).

Based on the parties' arguments and the PSR, the Court found an upward departure appropriate under Section 4A1.3. The Court found defendant's criminal history category—category III—did not adequately reflect defendant's long pattern of criminal conduct, specifically his pattern of drug dealing. The Court noted that defendant's age has failed to slow him, and his periods of incarceration have failed to deter him, leading the Court to conclude that defendant was highly likely to reoffend when released. Based on the PSR and the Court granting the government's downward variance based on drug quantity, the advisory guidelines range was 30 months' to 37 months' imprisonment. The Court departed upward to a range of 37 months' to 46 months' imprisonment.

### B. *Alternative Variance*

In the alternative to departure, the Court stated it would vary to the same level for the same reasons, as viewed through the Section 3553(a) factors alone. Thus, in the alternative to departing upward, the Court would vary upward from defendant's advisory guidelines range of 30 months' to 37 months' imprisonment, to a range of 37 months' to 46 months' imprisonment.

### IV. CONCLUSION

For these reasons and for the reasons stated during the sentencing hearing, the Court granted the government's motion for an upward departure. In the alternative, the Court would vary upward to the same range. The Court imposed a sentence of 46 months' imprisonment.

**IT IS SO ORDERED** this 12th day of April, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

5

Case 1:22-cr-00057-CJW-MAR   Document 37   Filed 04/12/23   Page 5 of 5